UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND J. DOUVILLE, | Case No.: 15-cv-2946 BEN (JLB) |
| Plaintiff, | **REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| CAROLYN W. COLVIN, | |
| Defendant. | **[ECF Nos. 18, 20]** |

## I. INTRODUCTION

This matter is before the Court on cross-motions for summary judgment.  Plaintiff Raymond J. Douville moves under 42 U.S.C. § 405(g)[1] of the Social Security Act for judicial review of the Commissioner of Social Security Carolyn W. Colvin's final decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.

---

[1] Section 405(g) states, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States . . . .  The court shall have power to enter, upon the pleadings and   transcripts of the record, a   judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).

1

This Report and Recommendation is submitted to United States District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the Local Rules of Practice for the United States District Court for the Southern District of California. After careful review of the moving and opposing papers, the administrative record, the facts, and the applicable law, for the reasons set forth below, the Court hereby **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that the Commissioner's cross-motion to affirm the Administrative Law Judge's decision be **GRANTED**.

## II. BACKGROUND

Plaintiff is a 52-year-old Caucasian male. (A.R. 345.) He was born and raised in New Hampshire and currently resides in San Diego, California. (A.R. 4884.) He has seven children, most of whom are adults. (A.R. 2033–34.) Plaintiff is a heavy smoker (A.R. 2784), and he has an extensive history of drug and alcohol abuse (A.R. 2034).

Plaintiff has not worked since approximately July 11, 2009, when his claimed disability began. (A.R. 345.) Plaintiff formerly worked full-time as an automotive technician and then as a heavy equipment technician. (A.R. 345.) Plaintiff testified that he is unable to work because he has seizures and has suffered strokes and heart attacks. (A.R. 346.) Specifically, Plaintiff testified that he cannot work because he has weakness in his right side from his last stroke that limits his ability to lift objects, to do gross handling with his right hand, and to walk, sit, and stand for long periods of time. (A.R. 349–53; 366, 369–70.)

On September 16, 2010, Plaintiff protectively filed an application under Title II of the Social Security Act for a period of disability and disability insurance benefits. (A.R. 623–27.) On the same day, Plaintiff also protectively filed an application under Title XVI of the Social Security Act for supplemental security income. (A.R. 628–32.) In both applications, Plaintiff alleged his disability began on July 11, 2009. (A.R. 623, 628.) Plaintiff's applications were denied initially on December 28, 2010 (A.R. 375–76), and upon reconsideration on June 29, 2011 (A.R. 377–78).

///

2

Following the denials of his applications, on August 1, 2011, Plaintiff filed a written request for a hearing by an Administrative Law Judge ("ALJ").  (A.R. 394–95.)  On November 8, 2013, a hearing was held before ALJ Leland Spencer.  (A.R. 341–74.) Plaintiff, a vocational expert, and two medical experts testified at the hearing.  (*Id.*)  In addition, the ALJ held a supplemental hearing on January 10, 2014, but no relevant testimony was taken at that time.  (A.R. 336–40.)

On March 27, 2014, the ALJ issued a written decision finding Plaintiff not disabled as defined by the Social Security Act.  (A.R. 311–30.)  On April 23, 2014, Plaintiff filed with the Social Security Administration's Appeals Council a request for review of the ALJ's hearing decision.  (A.R. 127–28.)  The Appeals Council denied his request on October 26, 2015, rendering the ALJ's March 27, 2014 decision the final decision of the Commissioner of Social Security.  (A.R. 7–13.)

On December 29, 2015, Plaintiff filed a complaint in this Court requesting judicial review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income.  (ECF No. 1.)  On April 29, 2016, Defendant filed an answer and the administrative record ("A.R.").  (ECF Nos. 11–16.)  On May 27, 2016, Plaintiff filed a motion for summary judgment seeking reversal of the Commissioner's final decision and an award of the benefits sought or, alternatively, remand to the Social Security Administration for further administrative proceedings.  (ECF No. 18.)  On June 16, 2016, Defendant filed a cross-motion for summary judgment (ECF No. 20) and an opposition to Plaintiff's motion for summary judgment (ECF No. 21).[2] Despite a July 1, 2016 deadline to file an opposition to Defendant's cross-motion for summary judgment and a reply to Defendant's opposition (*see* ECF No. 17), Plaintiff did

---

[2]  The documents filed as Defendant's cross-motion for summary judgment (ECF No. 20) and as Defendant's opposition to Plaintiff's motion for summary judgment (ECF No. 21) are identical. Therefore, the Court addresses them as a single filing.

not file an opposition or a reply.  As no opposition to Defendant's cross-motion was filed, Defendant did not file a reply.

### III. LEGAL STANDARDS

**A.    Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) that he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. § 423(d)(1)(A), (2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id.*

Under the authority of the Social Security Act, the Commissioner is required to perform a five-step sequential analysis for determining whether an individual is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 416.920(a).  If the Commissioner can find that an applicant is "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).

At step one, it is determined whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  At step two, it is determined whether the claimant has either a medically determinable impairment or combination of impairments that when combined is "severe."  20 C.F.R. § 416.920(c).  At step three, it is determined whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of one or more specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(d).  Before considering step four, the claimant's residual functional capacity ("RFC")—his ability to do physical and mental work activities on a sustained basis despite the limitations from his impairment(s)—is determined.  20 C.F.R. § 416.920(e).  At step four, it is determined whether the claimant has the residual functional capacity to do any work that he has done in the past.  20 C.F.R.

§ 416.920(f).  Lastly, at step five, it is determined whether the claimant is able to do some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.  20 C.F.R. § 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

Although the Commissioner must assist the claimant in developing a record at each step of the sequential process, the claimant bears the burden of proof during the first four steps while the Commissioner bears the burden of proof at the fifth step.  *Id.* at 1098 & n.3.

**B.   Scope of Review**

The Social Security Act permits unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review, however, is limited.  The Court must affirm the Commissioner's final decision unless: (1) it is based on legal error; or (2) it is not supported by substantial evidence.  *See Schneider*, 223 F.3d at 973.

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."  *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1097).  Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Flaten v. Sec. of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993)).  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.").  However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v.*

*Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## IV.  ALJ'S FINDINGS

The ALJ rendered an unfavorable decision regarding Plaintiff's applications for disability benefits on March 27, 2014.  (A.R. 311–30.)  At step one of the sequential evaluation process, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since July 11, 2009, the alleged onset date."  (A.R. 316.)

At step two, the ALJ determined that Plaintiff suffers from the following severe impairments that cause more than minimal functional limitations: (1) Lupus Anticoagulant with long-term Coumadin use; (2) heart impairment with pacemaker; (3) back pain; (4) seizure disorder; (5) obesity; (6) chronic obstructive pulmonary disease; (7) amphetamine dependence; (8) alcohol dependence; (9) anxiety disorder; and (10) depressive disorder.  (A.R. 316.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (A.R. 316.)

Because the ALJ found Plaintiff's impairments do not meet or equal a listed impairment, he assessed Plaintiff's RFC before moving on to step four of the sequential evaluation process.  The ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant must avoid workplace hazards and may have no interaction with the public."  (A.R. 318.)

In determining Plaintiff's RFC, the ALJ considered the opinions of several physicians, including the opinion of Phong T. Dao, D.O., who completed an internal medicine evaluation of Plaintiff on or around May 24, 2010.  (A.R. 790–99.)  With respect to Plaintiff's functional limitations, Dr. Dao gave Plaintiff a light RFC and added that "[c]limbing, stooping, kneeling and crouching should be limited to occasionally" and "[m]anipulation with the right hand is limited to occasional."  (A.R. 795.)  The ALJ adopted

Dr. Dao's opinion to the extent he assigned Plaintiff a light RFC but rejected the postural and manipulative limitations opined by Dr. Dao.  (A.R. 322.)

At step four, the ALJ determined that Plaintiff "is unable to perform any past relevant work" because "[t]he demands of [his] past relevant work exceed the residual functional capacity."  (A.R. 323.)

Finally, at step five, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (A.R. 323.)  The ALJ concluded that Plaintiff is not disabled and has not been under a disability as defined by the Social Security Act from July 11, 2009, through the date of the ALJ's decision.  (A.R. 324.)

## V. ANALYSIS

Plaintiff, in his motion for summary judgment, asserts that the ALJ committed reversible legal error when he failed to articulate a legally sufficient rationale for rejecting the portion of Dr. Dao's opinion that limited Plaintiff's right hand manipulative functionality.[3]  (ECF No. 18-1 at 2–3.)  Specifically, Plaintiff argues that the ALJ erred when he discarded this "significant probative evidence . . . without explanation setting forth 'specific and legitimate reasons'" for doing so.  (*Id.* at 3.)  Plaintiff argues further that the ALJ also erred when he did "not cite to any evidentiary basis to support his rejection of Dr. Dao['s opinion]."  (*Id.* at 5.)  Instead, Plaintiff argues, the ALJ "simply substituted his own lay opinion for that of the medical professional; something which is not allowed."  (*Id.* at 6.)  Plaintiff argues that had the ALJ not rejected Dr. Dao's opinion, the ALJ would be required to find Plaintiff disabled, as the vocational expert testified during Plaintiff's

---

[3]  As noted above, the ALJ rejected two aspects of Dr. Dao's opinion: a postural limitation and a manipulation limitation.  (A.R. 322.)  Plaintiff's argument focuses on the ALJ's rejection of Dr. Dao's opinion as it relates to right hand manipulative functionality only.

hearing that no work would exist for Plaintiff if his right hand manipulative functionality was limited to "occasionally." (ECF No. 18-1 at 5 (citing A.R. 365–68).)

Defendant, in her cross-motion and opposition, argues that the ALJ's decision to reject Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation is free from legal error. (ECF No. 20-1 at 9–10.) Defendant argues that the ALJ did not substitute his lay opinion for that of a medical professional but instead reviewed and interpreted the medical evidence and, in light of conflicting evidence, determined it was proper to give less weight to Dr. Dao's opinion. (*Id.*)

In addition, Defendant argues that the ALJ's decision should be affirmed because the totality of the medical evidence does not support Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation. (*Id.* at 7–9.) Plaintiff does not address this issue in his motion.

**A.    Background**

　　1.    Dr. Dao's Opinion

At the request of the San Diego Department of Social Security, Dr. Dao performed a complete internal medicine evaluation of Plaintiff on or around May 24, 2010. (A.R. 790–99.) Upon meeting Dr. Dao, Plaintiff complained of back pain, diabetes, and right hand pain. (A.R. 790.) With respect to his back pain, Plaintiff stated he had been experiencing the pain since 1996, after he injured himself while working in a factory where he did a lot of heavy lifting. (A.R. 791.) The pain had progressively worsened and had become constant and localized in the lumbar region without any pain radiation. (A.R. 791.) With respect to his hand pain, Plaintiff stated that he had been experiencing the pain for the past two days. (A.R. 791.) His right hand had started to swell slowly, and he noticed some warmth in the hand. (A.R. 791.) Due to the swelling and the pain, Plaintiff had trouble making a complete fist and carrying heavy objects with his right hand. (A.R. 791.)

Dr. Dao completed a physical examination of Plaintiff and ordered an x-ray of Plaintiff's lumbar spine. (A.R. 792–95.) Dr. Dao found that, generally, Plaintiff was "in

no acute distress." (A.R. 792.)  With respect to Plaintiff's extremities, Dr. Dao found Plaintiff's range of motion to be "grossly normal bilaterally" in all of his extremities except for his right wrist.  (A.R. 794.)  With respect to Plaintiff's right wrist, Dr. Dao found that "[t]here is a 1 inch scar on the palmar aspect of the right wrist" and that extension was 40 degrees, flexion was 45 degrees, ulnar flexion was 25 degrees, and radial flexion was 15 degrees.  (A.R. 794.)  Dr. Dao also found that Plaintiff's right hand was swollen and warmer than the left hand.   (A.R. 794.)   With respect to Plaintiff's neurological functioning, specifically his motor functioning, Dr. Dao found that Plaintiff exhibited "[g]ood tone bilaterally, with good active motion," and his strength was "5/5 in all extremities." (A.R. 794.)  The x-ray of Plaintiff's lumbar spine demonstrated "[m]ild anterior wedging of L1" and "[m]inimal spondylosis L2 to L5." (A.R. 795.)

       After examining Plaintiff, Dr. Dao offered the following medical impressions:

- New onset of diabetes mellitus Type II.  The claimant is currently on oral medication, however the claimant does not check his blood sugar on a frequent basis because he does not have a glucometer machine.

- Degenerative joint disease of the lumbar spine.  On today's examination, he had decreased range of motion of the lumbar spine with tenderness to palpation.  He ambulated without any difficulty and without any limping.  Motor strength and sensation in the extremities were intact.

- Possible right hand cellulitis.  On today's examination, the claimant had edema of the right hand with a slight pinkish coloration with increased warmth compared to the left hand.  He had decreased range of motion of the right hand with tenderness to palpation.  The claimant was advised to follow up with his primary care physician as soon as possible to have his right hand evaluated.

- History of lupus anticoagulant.  The claimant is currently on Coumadin.  The claimant currently still smokes and was advised to stop smoking.

(A.R. 795.)  In addition, Dr. Dao offered the following functional assessment for Plaintiff:

9

The claimant can lift or carry, push or pull 20 lbs. occasionally and 10 lbs. frequently.  The claimant can stand or walk for six hours in an 8-hour workday.  The claimant can sit for six hours in an 8-hour workday.

Climbing, stooping, kneeling and crouching should be limited to occasionally.

Manipulation with the right hand is limited to occasional.

There are no visual, communicative or environmental limitations.

(A.R. 795–96.)

### 2. ALJ's Decision Regarding Dr. Dao's Opinion

The ALJ's decision stated the following with respect to Dr. Dao's medical opinion:

Consultative examiner Dr. Dao opined the claimant retains the capacity to perform light exertion work with occasionally climbing, stooping, kneeling and crouching, and occasional manipulation with the right hand (Exhibits 3F/6–7).

The undersigned gives [Dr. Dao's] opinion[] some weight. Specifically, while the undersigned agrees that the claimant's impairments do no[t] prevent him from performing up to light exertion work activity as supported by the medical evidence and other factors discussed above, the medical evidence showing no significant and persistent neurologic deficits does not support [his] opined postural and manipulative limitations. Accordingly, this portion of [his] opinion[] is given little weight.

(A.R. 322.)

## B. Applicable Law

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In the instant case, it is undisputed that Dr. Dao is an examining physician.  (ECF No. 18-1 at 3; ECF No. 20-1 at 7.)

///

10

The ALJ is not bound by the medical opinions of any physician, and he may discount or reject the opinion of an examining physician under certain circumstances. To reject the opinion of an examining physician that is not contradicted by another doctor's opinion, the ALJ must provide "clear and convincing reasons" that are supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester*, 81 F.3d at 830). To reject the opinion of an examining physician that is contradicted by another doctor's opinion, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* (citing *Bayliss*, 427 F.3d at 1216).

In the instant case, Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation is contradicted by the opinions of examining physician Dr. G. Taylor-Holmes (A.R. 926–30) and nonexamining physician Dr. Howard McClure (A.R. 356–59). Dr. Taylor-Holmes conducted a Physical Residual Functional Capacity Assessment of Plaintiff on December 27, 2010. He found that Plaintiff did not require any manipulative functional limitations. (A.R. 928.) Dr. McClure, a medical expert, testified at Plaintiff's November 8, 2013 hearing before the ALJ that after reviewing Plaintiff's medical records through Exhibit 21F, he would give Plaintiff "a full medium RFC with seizure precautions and with avoiding hazardous machinery because of his anticoagulated state." (A.R. 359.) Dr. McClure did not opine that Plaintiff required any right hand manipulative functional limitations. (*See id.*) Thus, to reject Dr. Dao's controverted opinion regarding Plaintiff's right hand manipulative limitation, the ALJ needed to provide specific and legitimate reasons that are supported by substantial evidence in the record.[4]

---

[4] The Court notes that even if the "clear and convincing reasons" standard were to apply, the Court's recommendation regarding the instant cross-motions for summary judgment would not change. For the reasons discussed in this Report and Recommendation, the Court concludes that in the context of this case, the ALJ's reason for rejecting Dr. Dao's opinion is both "clear and convincing" and "specific and legitimate," and it is supported by substantial evidence in the record.

15-cv-2946 BEN (JLB)

**C.   Discussion**

1.   The ALJ Did Not Commit Legal Error

The ALJ did not err in rejecting Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation.  The ALJ rejected this portion of Dr. Dao's opinion on the basis that the medical evidence, showing no significant and persistent neurologic deficits,[5] does not support the opined right hand manipulative limitation.  (A.R. 322.)  While this reason may be brief, its brevity does not detract from the fact that it is non-conclusory, specific, and legitimate.

In addition, the ALJ's reason for rejecting Dr. Dao's opinion is not a "substitu[ion of] his own lay opinion for that of the medical professional," as Plaintiff argues.  (ECF No. 18-1 at 6.)  The ALJ specifically stated that his reason for rejecting Dr. Dao's opinion is dependent on the absence of a showing of significant and persistent neurologic deficits in the medical evidence.  (A.R. 322.)  The ALJ did not, on his own and without reference to any medical evidence, opine that Plaintiff does not suffer from significant and persistent neurological deficits.

Further, Plaintiff's argument that the "ALJ does not cite to any evidentiary basis to support his rejection of Dr. Dao with respect to Mr. Douville's manipulative functional limitations" is without merit.  (ECF No. 18-1 at 5.)  The ALJ discussed the medical evidence "showing no significant and persistent neurologic deficits" throughout his decision.  Specifically, the ALJ stated in his decision that in July 2009, approximately one month after Plaintiff suffered gait instability with left-sided numbness and generalized weakness, Plaintiff "had no residual symptoms with only occasional recurrence of left sided tingling (Exhibits 2F/3, 6, 20F)" and that "his treating provider R. Rhiew, M.D. saw

---

5   Although Dr. Dao's opinion about Plaintiff's right hand manipulative limitation was tied to symptoms in May 2010 consistent with possible right hand cellulitis, there is no indication in the record that Plaintiff continued to suffer from right hand cellulitis by the time of his November 8, 2013 administrative hearing.  At the hearing, Plaintiff testified that his right hand manipulative limitation was due to right arm weakness resulting from a stroke in November 2012 (A.R. 349–53; 366, 369–70); hence the relevance of the lack of medical evidence of neurological deficits.

nothing in his job description that was medically contraindicated other than hazards of accidental injury (Exhibits 2F/7, 10)."  (A.R. 319.)  In addition, the ALJ stated in his decision that Plaintiff "sought outpatient care for his physical impairments with S. Cheffet, D.O. at the Lemon Grove Family Health Center" and "Dr. Cheffet's progress notes frequently show the claimant's . . . extremities were normal (Exhibits 20F/7, 14, 19, 22, 25, 30, 31, 33, 38, 52, 55, 59, 62, 65)."  (A.R. 319.)  Further, the ALJ stated in his decision that in June 2012, treating emergency department physician A. Letai, M.D., reviewed Plaintiff's

> 12 head CT scans, 1 orbital CT scan, 1 soft tissue neck CT scan, 4 chest CT scans, 2 abdominal CT scans, a brain MRI and MRA and carotid duplex studies and found that all of the scans and studies were "completely negative" (Exhibit 16F/118).  Dr. Letai found it hard to believe that the claimant had multiple strokes because all of the imaging was completely negative (Exhibit 16F/118).  Noting the claimant had been seen in a hospital 12 times, Dr. Letai felt the claimant's only "real" medical problems were chronic obstructive pulmonary disease and history of alcohol, tobacco and substance abuse and did not see any evidence that the claimant ever had a cardiovascular accident (Exhibit 16F/118).

(A.R. 319.)

"[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'"  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).  ALJs need only "make fairly detailed findings in support of the administrative decisions to permit courts to review those decisions intelligently."  *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984).  Here, the ALJ supported his decision to reject a portion of Dr. Dao's opinion with detailed findings and citations to the medical records that were sufficient to allow the Court to complete an intelligent review of his decision.  Having reviewed the decision, the Court concludes that the ALJ's reason for rejecting Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation is specific, legitimate, and free from legal error.

///

13

2.      The ALJ's Decision is Supported by Substantial Evidence

In addition, the Court concludes that the ALJ's decision to reject Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation is supported by substantial evidence in the record.  First, the totality of Plaintiff's medical records does not support Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation.  As evidenced by the lengthy administrative record in this case, Plaintiff has an extensive medical history. Plaintiff's medical records show that from June 2009, approximately one month before Plaintiff's alleged disability onset date, through the date of the ALJ's decision, Plaintiff was either seen in a hospital emergency department or admitted to a hospital over 50 times, and he was seen by a primary care physician or at a walk-in clinic over 40 times.  Of these more than 90 medical visits, there is no indication in the record that Plaintiff ever complained of or sought treatment for a loss of, or reduction in, the manipulative functionality of his right hand.

In addition, a general physical examination of Plaintiff's extremities and neurological functioning was conducted at almost every visit to a medical facility, and the record is replete with normal examinations of Plaintiff.  For example, Plaintiff's right hand grip strength was assessed on numerous occasions as "moderate" (A.R. 2230, 2238, 2751), "strong" (A.R. 2256, 2380, 2638, 2658, 3035, 3044), "five out of five" (A.R. 876), or equal to that of his left hand (A.R. 2230, 2238, 2256, 2334, 3552, 4613).  His motor strength and function in his right upper extremity was assessed on multiple occasions as "five out of five" (A.R. 714, 741, 1026, 1217, 1223, 3536), "full" (A.R. 789), "excellent" (A.R. 4905), or without detectable deficit (A.R. 869, 1865, 2045–46, 2296, 2338, 3975, 4665, 4763, 4770, 4775, 4963).  He was assessed on multiple occasions as having a range of motion in his right upper extremity that was "full" (A.R. 876, 1971), "active" (A.R. 2643, 2662, 2672, 2937, 2939), or within normal limits (A.R. 1217, 1223, 1865, 2194, 2207, 2780).  He was noted as having "no joint pain or swelling" in his extremities during most visits.  (A.R. 844–45, 985, 1026, 3754, 3759, 3912, 3971, 4116, 4897–98, 4901, 4926, 4962.)  Further,

14

1   Plaintiff underwent multiple CT scans of his brain and head and they were all negative.

2   (A.R. 724, 861, 2027, 3005, 3041–42, 3531, 3975, 4278, 4614, 4927, 4952.)

3        The only significant indication that Plaintiff suffered decreased right hand strength

4   and grip abduction was noted by Plaintiff's primary care physician in 2007.  (A.R. 753,

5   763.)  However, Plaintiff underwent corrective carpal tunnel surgery in early 2008, more

6   than one year before his alleged disability onset date.  (A.R. 747.)  Plaintiff's medical

7   records do not indicate that he suffered any residual right hand pain or functional

8   limitations as a result of the surgery.  On a more recent occasion, on April 14, 2011,

9   Plaintiff's motor strength in his right upper extremity was measured as a three out of five

10  while Plaintiff was experiencing the onset of a cerebrovascular accident ("CVA").  (A.R.

11  1089.)  However, the CVA was timely aborted via tPA administration (A.R. 1083), and by

12  the next day, all of Plaintiff's extremities were measured as equal in strength and no

13  neurological deficits were noted.  (A.R. 1192.)  In addition, Plaintiff had difficulty moving

14  his right upper extremity on February 1, 2012 (A.R. 3844), but that problem appeared to

15  have resolved by February 4, 2012 (A.R. 3912).

16       Second, as discussed above, Dr. Dao's opinion regarding Plaintiff's right hand

17  manipulative limitation was contradicted by the opinions of Drs. Taylor-Holmes and

18  McClure.  Examining physician Dr. Taylor-Holmes performed an RFC assessment of

19  Plaintiff and opined that Plaintiff did not require any manipulative functional limitations.

20  (A.R. 928.)  He also noted that Plaintiff had a history of a CVA without significant residual

21  effects and that neurologically, Plaintiff was without deficits.  (A.R. 930.)  Nonexamining

22  physician Dr. McClure testified at Plaintiff's hearing that he would give Plaintiff a full

23  medium RFC with seizure precautions and with avoiding hazardous machinery, but

24  without any limiting instruction with respect to Plaintiff's right hand manipulative

25  functionality.  (A.R. 359.)

26       Third, Dr. Dao's own medical assessment of Plaintiff provides support for the ALJ's

27  rejection of the portion of Dr. Dao's opinion that addresses Plaintiff's right hand

28  manipulative limitation.  Dr. Dao opined that at the time he examined Plaintiff, Plaintiff

presented with "[p]ossible right hand cellulitis." (A.R. 795.)  In addition, Plaintiff stated to Dr. Dao that his right hand pain and swelling had started only two days prior.  (A.R. 791.)  Thus, it is probable that Dr. Dao's opined right hand manipulative limitation was based only on the temporary inflammation of Plaintiff's right hand and not on a persistent neurologic deficit.

Finally, Plaintiff's own hearing testimony does not support Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation.  Plaintiff testified at his November 8, 2013 hearing that he has difficulty performing gripping movements with his right hand and that this difficulty developed after he suffered a stroke in November 2012.  (A.R. 349–50, 366, 369–70.)  Thus, according to Plaintiff, his alleged right hand manipulative limitation was established in 2012, approximately two years after Dr. Dao offered his opinion.  This further supports the likelihood that Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitations was based on the temporary inflammation of Plaintiff's right hand and not on a persistent neurologic deficit.  In addition, there is no indication in the medical records that Plaintiff suffered a stroke in November 2012 that would have caused his alleged right hand manipulative limitation.[6]  While it was noted that Plaintiff experienced decreased strength in his right upper extremity on February 25, 2013 (A.R. 4931), and on March 15, 2013 (A.R. 4951), a physical examination of Plaintiff on December 24, 2013, showed that Plaintiff exhibited no motor neurological deficits (A.R. 4963).

Considering the evidence as a whole, the Court concludes that Dr. Dao's opinion regarding Plaintiff's right hand manipulative limitation is conflicted by the substantial evidence in the record.  Accordingly, the ALJ's decision to reject Dr. Dao's opinion

---

[6] The administrative record contains no medical records for Plaintiff from approximately October 19, 2012, through February 9, 2013.  This is likely because Plaintiff was incarcerated during this period. On February 13, 2013, Plaintiff explained to Dr. Sherry Braheny at Sharp Grossmont Hospital that he was released from jail on February 4, 2013, after serving a four-month sentence.  (A.R. 4903.)

1    regarding Plaintiff's right hand manipulative limitation is supported by substantial
2    evidence in the record.

3                                    **VI. CONCLUSION**

4            The Court concludes that the ALJ's decision to reject Dr. Dao's opinion regarding
5    Plaintiff's right hand manipulative limitation is both free from legal error and supported by
6    substantial evidence in the record.    Accordingly, the Court **RECOMMENDS** that
7    Plaintiff's motion for summary judgment be **DENIED** and that the Commissioner's cross-
8    motion to affirm the Administrative Law Judge's decision be **GRANTED**.

9            **IT IS HEREBY ORDERED** that any written objections to this Report and
10   Recommendation shall be filed with the Court and served on all parties **no later than**
11   **January 30, 2017**.    The document should be captioned "Objections to Report and
12   Recommendation."

13           **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with
14   the Court and served on all parties **no later than February 13, 2017**.

15           The parties are advised that failure to file objections within the specified time may
16   waive the right to raise those objections on appeal of the Court's order.  *Turner v. Duncan*,
17   158 F.3d 449,445 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

18           **IT IS SO ORDERED.**

19   Dated:  January 13, 2017

20
21                                              Hon. Jill L. Burkhardt
                                                United States Magistrate Judge
22
23
24
25
26
27
28

                                               17